**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4497
_____

RAYMOND BRONOWICZ,
                                        Appellant

v.

ALLEGHENY COUNTY;
PROBATION OFFICER KAREN OLLIS;
PROBATION OFFICER JEFFREY CIMA;
THOMAS MCCAFFREY, Director of Allegheny County
Adult Probation;  JUDGE DONALD E. MACHEN
_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA
(W.D. Pa. No. 2-12-cv-01023)
District Judge: Honorable Nora Barry Fischer

Argued:  January 21, 2015
_____

Before: FISHER, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: September 22, 2015)

Robert M. Owsiany, Esq.    [ARGUED]
Suite 544
535 Smithfield Street
Oliver Building
Pittsburgh, PA 15222
       *Counsel for Appellant*

Virginia S. Scott, Esq.     [ARGUED]
Dennis R. Biondo, Jr., Esq.
Paul R. Dachille, Esq.
Jake S. Lifson, Esq.
Allegheny County Law Department
300 Fort Pitt Commons
445 Fort Pitt Boulevard
Pittsburgh, PA 15219
       *Counsel for Appellees, County of Allegheny and*
       *Probation Officer Karen Ollis, Probation Officer*
       *Jeffrey Cima, and Thomas McCaffrey, in their*
       *individual capacities*

Caroline P. Liebenguth, Esq.     [ARGUED]
Administrative Office of Pennsylvania Courts
1515 Market Street
Suite 1414
Philadelphia, PA 19102
       *Counsel for Appellees, Probation Officer Karen Ollis,*
       *Probation Officer Jeffrey Cima, and Thomas*
       *McCaffrey, in their official capacities*

2

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Plaintiff-Appellant Raymond Bronowicz ("Appellant" or "Bronowicz") is a former Pennsylvania state inmate and probationer. As a probationer, Bronowicz was repeatedly charged with probation violations and was ultimately sentenced to additional incarceration. Bronowicz successfully appealed that prison sentence in state court and then filed the present action seeking, inter alia, damages for his wrongful incarceration under 42 U.S.C. § 1983. Bronowicz appeals from the District Court's dismissal of his claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

This appeal raises a discrete issue involving claims for damages for unlawful incarceration brought under 42 U.S.C. § 1983. We must decide whether an order from the Superior Court of Pennsylvania vacating a sentence imposed by a court of common pleas constitutes a favorable termination of the proceedings against a plaintiff within the meaning of *Heck v. Humphrey*—notwithstanding the fact that the order failed expressly to address the inmate's specific legal challenges to the sentence. For the reasons that follow, we hold that such an order constitutes a favorable termination of the proceedings against the plaintiff and that any § 1983 claims stemming from the invalidated sentence are not barred by *Heck*. Accordingly, we will affirm in part and reverse in part the District Court's order dismissing Appellant's claims.

I. Facts[1]

Bronowicz's § 1983 claims arise from a complicated series of sentencing and probation revocation proceedings that allegedly had the cumulative effect of unlawfully imposing on Bronowicz additional penalties for criminal judgments that had already been satisfied. Because the sequence of events that culminated in his wrongful incarceration is complex, we must discuss the initial criminal charges and the events of each hearing in detail.

*A.*      *Initial Charges and Sentencing*

On July 5, 2000, Bronowicz was charged with several criminal violations of Pennsylvania law ranging from terroristic threats to driving under the influence.[2] Bronowicz entered a negotiated plea and appeared before the Allegheny

---

[1] Because Bronowicz appeals from the grant of a motion to dismiss, we accept all his factual allegations as true and construe the complaint in the light most favorable to him. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014).

[2] Specifically, on July 5, 2000, Bronowicz was charged by information with violations of 18 Pa. Cons. Stat. § 2702(a)(3), aggravated assault, one count; 18 Pa. Cons. Stat. § 2703.1, aggravated harassment by prisoner, one count; 18 Pa. Cons. Stat. § 2706(a)(1), terroristic threats, two counts; 75 Pa. Cons. Stat. § 3731(a)(1), driving under the influence of alcohol ("DUI"), one count; 18 Pa. Cons. Stat. § 5104, resisting arrest, one count; 18 Pa. Cons. Stat. § 2701(a)(1), simple assault, three counts; and 18 Pa. Cons. Stat. § 5503, disorderly conduct, one count.

4

County Court of Common Pleas (the "Court of Common Pleas") for sentencing on June 6, 2001. Bronowicz was sentenced as follows:

- Count One, aggravated assault, withdrawn per the plea agreement

- Count Two, aggravated harassment by a prisoner, withdrawn per the plea agreement

- Count Three, terroristic threats, no further penalty[3]

- Count Four, terroristic threats, five to ten months' incarceration, effective June 6, 2001, with credit for time served, and five years' probation, also effective June 6, 2001

- Count Five, DUI, ninety to one hundred eighty days' incarceration, effective June 6, 2001, with credit for time served, and five years' probation, also effective June 6, 2001, both to run concurrently with the sentence for Count Four

- Count Six, resisting arrest, no further penalty

- Count Seven, simple assault, no further penalty

---

[3] An assessment of "no further penalty" indicates that no additional incarceration, probation, or fines will be imposed for that count.

- Count Eight, simple assault, two years' probation, to run concurrently with the sentences for Counts Four and Nine

- Count Nine, simple assault, two years' probation, to run concurrently with the sentences for Counts Four and Eight

- Count Ten, disorderly conduct, no further penalty

Thus Bronowicz was sentenced to further imprisonment and /or probation for only Counts Four, Five, Eight and Nine. Counts One and Two were withdrawn per the plea agreement, and Bronowicz was assessed "no further penalty" for Counts Three, Six, Seven, and Ten—indicating that Bronowicz had fully served his sentence for these counts as of that hearing. With credit for time served, he was released from incarceration on June 6 and began serving a term of probation.

B.      First Revocation Proceeding

On July 21, 2005, Bronowicz appeared before the Court of Common Pleas for probation violations. The court revoked Bronowicz's probation and re-sentenced him for two counts. However, because at least one of the counts was numbered differently than in the original information, there was confusion as to which counts were available for re-sentencing.[4]      Bronowicz was sentenced to further

---

[4] Bronowicz alleges that Defendant Probation Officers Jeffrey Cima and Karen Ollis ("Defendant Probation Officers") and /or the District Attorney intentionally

incarceration and additional probation for "Count One," DUI (which appeared as Count Five in the original information) and an additional probationary period for Count Three, terroristic threats. Bronowicz alleges that these sentences were imposed illegally because: (1) the additional sentence imposed for the DUI count exceeded the statutory maximum penalty of five years,[5] and (2) the court had no authority to impose an additional sentence for Count Three since no further penalty was assessed initially.[6]

Bronowicz was re-incarcerated and then granted house arrest on December 20, 2005.

---

rearranged the charges so that it appeared he could be resentenced for counts where initially no further penalty was assessed.

[5] Bronowicz pleaded guilty to DUI, misdemeanor in the first degree, which carries a maximum penalty of five years' imprisonment. *See* 18 Pa. Cons. Stat. § 1104. Under Pennsylvania law, a probationary sentence "may not exceed the maximum term for which the defendant could be confined." 42 Pa. Cons. Stat. § 9754(a). Bronowicz was sentenced to the maximum penalty of five years at his initial sentencing. Thus, he argues, any additional time imposed based on this count exceeded the maximum penalty permitted under law.

[6] Following a probation violation, a trial court lacks authority to resentence a defendant on a conviction for which he had originally been sentenced to "no further penalty." *See Commonwealth v. Williams,* 997 A.2d 1205, 1208-09 (Pa. Super. Ct. 2010).

*C.     Second Revocation Proceeding*

In July 2008, Bronowicz was arrested on other charges, and a bench warrant issued for alleged violations of probation. Bronowicz was again re-incarcerated.[7] On July 20, 2010, Bronowicz appeared at a second probation revocation hearing. The court "continued" Bronowicz's probation for Count Four, terroristic threats—though there was no term of probation to "continue" for this count, as Bronowicz's five-year term of probation had expired on June 5, 2006. App. 275. The court also sentenced Bronowicz to additional imprisonment for Count Five, DUI (now correctly numbered as in the original information), and with credit for time served, he was released from incarceration and "paroled forthwith" on July 27, 2010. App. 269. Bronowicz alleges that the "[c]ourt concluded its interest in the DUI charge" at that time, as he had fully served his sentence for this count. App. 269-70.

---

[7] Bronowicz alleges that because several of the sentences imposed in July 2005 were illegal, *see supra* lines 126-30, his "legal" probationary period expired in June 2008. App. 269. Accordingly, Bronowicz argues that he was no longer on probation when he was arrested for alleged probation violations in July 2008, making any sentence imposed illegal.

8

*D.    Third Revocation Proceeding*

In November 2010, another bench warrant issued for further probation violations,[8] and Bronowicz was again re-incarcerated.  Bronowicz's next revocation proceeding was scheduled for January 19, 2011 (the "January 2011 proceeding").  The day before the hearing, Bronowicz's lawyer told him that he would not be present for the hearing and informed Bronowicz that the probation office wanted to offer him a deal.  Bronowicz adamantly objected to any plea deal because he believed his probationary term had expired before his arrest.

The next day Probation Officer Karen Ollis spoke with Bronowicz while he was waiting to be called for his hearing.

---

[8] Bronowicz alleges that another probation officer told him that he had been released from his probationary sentence when he reported to the probation office after his release from custody in July 2010.  Nevertheless, Defendant Probation Officer Cima requested in November 2010 that Bronowicz report to the probation office.  When Bronowicz reported to the office, Officer Cima handcuffed Bronowicz for "smoking crack," and contacted Defendant Probation Officer Ollis who recommended incarceration.  App. 270-71.  Bronowicz maintains that he was never tested for drugs and that the Defendant Probation Officers never provided him with any test results evidencing drug use.  Bronowicz reminded them that he was no longer on probation, but he was "ignored." App. 271.  The November 2010 bench warrant was issued for this alleged probation violation.  Bronowicz avers in the Complaint that this entire episode was an illegal search and seizure in violation of the Fourth Amendment.

Officer Ollis told Bronowicz that she had reached an agreement with Bronowicz's attorney whereby Bronowicz would plead and spend 18 to 36 months in prison. Bronowicz again rejected the deal, but Officer Ollis ignored Bronowicz's protests and told him that he did not need to appear before the judge in light of the plea agreement.

The revocation hearing was held with neither Bronowicz nor his attorney in the courtroom. Officer Ollis presented the purported plea agreement to the judge, and Bronowicz was sentenced to 18 to 36 months' incarceration pursuant to the alleged agreement. Bronowicz maintains that he never waived his right to counsel, to appear before the court, or to have a plea agreement colloquy in open court and on the record. No transcript of the January 2011 proceeding exists.

E.      *Superior Court Appeal*

Bronowicz then appealed his sentence to the Pennsylvania Superior Court, arguing, inter alia, that: (1) his due process rights were violated when his probation was revoked and he was re-sentenced in January 2011 in absentia, and (2) the sentence imposed was illegal for numerous reasons. The Commonwealth filed an answering brief essentially admitting to all allegations. Notably, the Commonwealth conceded that: (1) the January 2011 hearing revoking Bronowicz's probation and imposing a new prison sentence was conducted in absentia, (2) there was no indication that Bronowicz had waived his right to be present, (3) Bronowicz had been re-sentenced for counts as to which no penalty was initially imposed, and (4) Bronowicz was subject to sentences that exceeded the statutory maximum. The Commonwealth ultimately concluded that "remand for a

10

new violation hearing and sentencing [was] required." App. 321.

In light of the Commonwealth's concessions, the Superior Court issued a short order on January 13, 2012 (the "Superior Court's order") vacating the sentence imposed in January 2011 and remanding for further proceedings. The order stated in relevant part:

> Although appellant now raises two challenges on appeal—one related to procedure and one related to the legality of the sentence—we need not address those challenges at this time, since the Commonwealth concedes that, due to an error committed at the time of sentencing, the current sentence must be vacated, and the case remanded to the trial court for a new sentencing hearing.
>
> Judgment of Sentence vacated. Jurisdiction relinquished.

App. 335-36. On remand, the Court of Common Pleas ordered Bronowicz "paroled forthwith," and released Bronowicz from custody on May 1, 2012. App. 446.

*F.*     *The Instant Suit*

Bronowicz filed the present action in District Court against Allegheny County and Probation Officers Karen Ollis, Jeffrey Cima, Thomas McCaffrey, Director of the Allegheny County Probation Office, and Judge Donald E.

11

Machen, in both their individual and official capacities,[9] alleging numerous constitutional torts related to his unlawful incarceration.

Defendants moved to dismiss the Complaint, arguing, inter alia, that Bronowicz's § 1983 claims were barred by *Heck v. Humphrey* because he had not obtained a favorable termination of the state proceedings against him. The District Court granted the motions, holding that the Superior Court order vacating Bronowicz's January 2011 sentence was not a favorable termination within the meaning of *Heck*.[10] Second, it held that Bronowicz's claims against the probation officers in their official capacities were barred by sovereign immunity.[11] Bronowicz timely appealed.

---

[9] Bronowicz's original and First Amended complaints include a host of other defendants, including the assistant district attorney and a former probation officer. The District Court dismissed these defendants and Judge Machen from the action, and Bronowicz does not challenge their dismissal on appeal.

[10] The District Court declined to exercise pendant jurisdiction over Bronowicz's remaining state claims.

[11] Bronowicz waived any argument to the contrary at oral argument, and we agree with the District Court that these claims are barred. Accordingly, we will affirm the District Court's order to the extent it dismissed the claims against the Defendant Probation Officers in their official capacities. *See Kentucky. v. Graham*, 473 U.S. 159, 165-66 (1985) (a suit against a government official in his or her "official-capacity" is actually a suit against the entity itself); *Haybarger v.*

II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331; we have jurisdiction under 28 U.S.C. § 1291.

We review a district court's dismissal order de novo. *Weiss*, 757 F.3d at 341. "In doing so, we 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id.* (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

III. Discussion

A. *Heck v. Humphrey*

Bronowicz argues on appeal that the Superior Court order satisfies *Heck*'s favorable termination requirement and that the District Court erred in dismissing his § 1983 claims on this basis.

Under *Heck*,

in order to recover damages for allegedly unconstitutional conviction or imprisonment, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

---

*Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (absent a waiver, suits against Pennsylvania's probation departments are barred by sovereign immunity).

> make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87. Thus, the rule applies if "success in [the] action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). The foundation for Bronowicz's claims rests on his allegations that he was improperly incarcerated for a total period of thirty months. Because Bronowicz seeks damages for this "illegal" imprisonment, he must satisfy the favorable termination rule if his claims are to proceed. *See, e.g.*, *Powell*, 757 F.3d at 346 (plaintiff's § 1983 claims stemming from his supervision on parole past his maximum sentence date must satisfy *Heck*'s favorable termination rule).

Bronowicz maintains that the Superior Court's order vacating the January 2011 judgment satisfies *Heck*'s favorable termination rule.[12] Appellees argue that the Superior Court's order does not satisfy the *Heck* bar because the Superior Court vacated the sentence but expressly declined to address Bronowicz's challenges to the legality of the sentence and proceedings—that is, the Superior Court

---

[12] Bronowicz argues in the alternative that *Heck*'s favorable termination rule should not apply here because he is no longer in custody and cannot pursue habeas relief, leaving him without a mechanism to satisfy the rule. We, however, conclusively rejected this argument in *Gilles v. Davis*, 427 F.3d 197, 209-10 (3d Cir. 2005), where we held that a plaintiff who had never been incarcerated and who had no recourse under the habeas statute was nevertheless subject to *Heck*'s favorable termination rule.

never "declare[d] that it [was] an illegal sentence." Allegheny Cnty. Br. at 12. We think, however, that vacating a judgment as opposed to declaring it "illegal" is a distinction without a difference here because the Superior Court order plainly invalidated Bronowicz's January 2011 sentence.

*B.     Applying the Favorable Termination Requirement*

The Supreme Court adopted the favorable termination rule in light of the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. The purpose of the favorable termination requirement is to avoid "the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 484 (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28.5, p. 24 (1991)); *see also Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (en banc).[13]

Thus, Bronowicz must demonstrate that success on his § 1983 claims would not conflict with the prior judicial resolution of his criminal proceedings. Because success on Bronowicz's claims arising from the January 2011

---

[13] The Supreme Court particularly wanted to guard against the possibility that a broad reading of § 1983 would permit collateral attack of outstanding criminal judgments in civil proceedings in contravention of Congress' intent that prisoners first seek relief through state and federal habeas procedures. *Heck*, 512 U.S. at 480-82.

proceedings would impugn only the validity of the judgment of sentence imposed on that date and not the validity of his underlying criminal convictions, he need not demonstrate that he was acquitted of the underlying criminal charges or succeeded in reversing those convictions. Rather, he need only prove that the January 2011 proceedings were ultimately terminated in his favor. *See, e.g., Powell*, 757 F.3d at 346 (§ 1983 claim for parole supervision past the maximum sentence date was not barred by *Heck* where the sentence—but not the conviction—had already been invalidated by an appropriate state tribunal).

We have conducted our most salient favorable termination analysis in *Kossler* and *Gilles*, in the context of § 1983 claims that, if successful, would demonstrate the invalidity of the plaintiffs' criminal convictions. *See Kossler*, 564 F.3d 181 (excessive force, false arrest, and malicious prosecution claims); *Gilles*, 427 F.3d 197 (claim that arrest and conviction violated the First Amendment). Accordingly, we required those plaintiffs to demonstrate that the outcomes of their prior criminal proceedings were indicative of their "innocence" of the crimes charged. *See Gilles*, 427 F.3d at 211-12; *Kossler*, 564 F.3d at 187 ("[A] prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element.").

*Kossler* and *Gilles* control our analysis here because they are demonstrative of our general approach to favorable termination analysis. In those cases, we considered the "particular circumstances," including relevant state law and the underlying facts of the case, in determining whether the "judgment as a whole . . . reflect[ed] the plaintiff's innocence." *Kossler*, 564 F.3d at 188 (internal quotation

16

marks omitted); *see also Gilles*, 427 F.3d at 211-12 (outcome of prior proceedings must be "*consistent* with innocence") (emphasis added). Thus, we have eschewed an overly mechanical approach that would categorically require a judgment to contain certain magic words in order to satisfy the favorable termination requirement. Rather, we consider whether the totality of the circumstances surrounding the prior proceedings reflect a favorable outcome for the plaintiff that would be consistent with the success of the plaintiff's § 1983 claims.

In *Kossler*, we considered whether a simultaneous conviction and acquittal on different counts arising from the same conduct constituted a favorable termination for the purpose of a subsequent § 1983 claim. Kossler was charged with public intoxication, disorderly conduct, and aggravated assault after he was involved in a scuffle with a police officer outside of a bar. Kossler was acquitted of aggravated assault and public intoxication, but convicted of disorderly conduct. He then sued the arresting officer for malicious prosecution under § 1983, arguing that *Heck* did not bar his claim because his acquittal on the aggravated assault charge constituted a favorable termination notwithstanding his conviction for disorderly conduct. *Kossler*, 564 F.3d at 183-86.

We examined the relevant statutes and underlying conduct and determined that the criminal statutes involved all "aim[ed] at punishing the same underlying misconduct," *Kossler*, 564 F.3d at 189 n.5, and that the charges in that case were "predicated on the same factual basis." *Id.* at 189. We concluded that under those circumstances, "the judgment as a whole [did] not reflect plaintiff's innocence," *id.* at 188,

17

because the plaintiff was "clearly guilty of some wrongdoing . . . notwithstanding [the acquittal for aggravated assault]." *Id.* at 189. Thus, the state proceeding "did not end in [the plaintiff's] favor, even when we view[ed] the facts in the light most favorable to him." *Id.*

Similarly, in *Gilles*, we considered whether resolution of criminal charges through Pennsylvania's Accelerated Disposition ("ARD") Program constituted a favorable termination. There, the plaintiff was arrested and charged with disorderly conduct after recording an inflammatory speech by a "campus evangelist" and refusing to leave at the direction of university police. After entering an ARD program, the plaintiff filed a § 1983 lawsuit against officers and the university alleging First Amendment violations. Examining the relevant state statutes, we noted that ARD "imposes several burdens upon the criminal defendant not consistent with innocence, including a probationary term, 'restitution[,] . . . imposition of costs, . . . and such other conditions as may be agreed to by the parties.'" *Gilles*, 427 F.3d at 211 (quoting Pa. R. Crim. P. 316(a)). We noted that probation in particular represented an "'unfavorable' period of judicially imposed limitations on freedom." *Id.* Thus, considering the circumstances, the disposition of plaintiff's criminal charges through ARD did not constitute a favorable termination of charges, and success on his § 1983 claims would conflict with the result of his criminal proceedings.

## C.  *Bronowicz has Demonstrated Favorable Termination*

Applying the same analysis here, and considering the Superior Court's order in the context of the revocation proceedings as a whole, we conclude those proceedings were terminated in Bronowicz's favor when the Superior Court

18

vacated the January 2011 judgment. As required by *Heck*, the Superior Court is "a state tribunal authorized to [declare Bronowicz's sentence invalid]." *See Heck*, 512 U.S. at 486-87; 42 Pa. Cons. Stat. § 742 (Pennsylvania law vests the Superior Court with jurisdiction over all appeals from final orders of the courts of common pleas). The Superior Court, however, may only disturb a sentence imposed by a court of common pleas after a probation violation if the revocation proceedings themselves or the judgment of sentence was illegal. *See Commonwealth v. Coolbaugh*, 770 A.2d 788, 792 (Pa. Super. Ct. 2001) (The Superior Court's scope of review of a sentence imposed after the revocation of probation "'is limited to the validity of the revocation proceedings and the legality of the judgment of sentence.'" (quoting *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. Ct. 2000))). Even though the Superior Court did not expressly address Bronowicz's challenges to the legality of the sentence and revocation proceedings, the Superior Court's order vacating the January 2011 judgment in light of the Commonwealth's concession of "an error committed at the time of sentencing" is consistent with Bronowicz's claim that the sentence imposed in January 2011 was invalid.

Unlike in *Kossler* and *Gilles*, the Superior Court order does not imply that the sentence imposed or the proceedings before the Court of Common Pleas in January 2011 were valid. The Superior Court vacated the "Judgment of Sentence" in its entirety,[14] and on remand, the Court of

---

[14] Appellees contend, and the District Court agreed, that the Superior Court's order vacated only the sentence imposed in January 2011, not the revocation order. Accordingly, Bronowicz's claims challenging the revocation of his probation and the legality of the January 2011

19

Common Pleas released Bronowicz from custody.[15]   App. 336.   Neither the Superior Court order nor the subsequent

revocation proceedings were dismissed as *Heck*-barred.  The Superior Court, however, vacated the "Judgment of Sentence," and under Pennsylvania law, the vacatur of a judgment of sentence is effective not only to vacate the sentence imposed, but also the revocation of probation.  *See, e.g.*, *Commonwealth v. Barnett*, 439 A.2d 182, 183 (Pa. Super. Ct. 1981) (appeal in which defendant sought review of merits of conviction should have been taken from judgment of sentence for probation violation rather than from denial of motion to vacate sentence); *Commonwealth v. Wright*, s116 A.3d 133 (Pa. Super. Ct. 2015) (vacating judgment of sentence where defendant was improperly sentenced for probation violations that took place after her probationary term had already expired).  The Superior Court vacated the January 2011 judgment of sentence, and while the order did not expressly conclude that the revocation of Bronowicz's probation was improper, the order is not inconsistent with that conclusion.

[15] In support of its conclusion that the Superior Court order vacated only the sentence imposed (and not the revocation of probation), the District Court asserts that following the vacatur, "a subsequent judgment was . . . entered by [the sentencing judge] which imposed a new sentence ordering [Bronowicz] paroled as of that date."  App. 31.  Bronowicz, however, alleges that he was released from incarceration and all supervision on May 1, 2012, and that no further sentence was imposed.  Appellant's Br. at 24.  The May 1, 2012 order is ambiguous; it states only that Bronowicz was "paroled forthwith."  App. 446.  The order does not specify that a new term of probation is being

order issued by the Court of Common Pleas vacating Bronowicz's sentence imposed any "unfavorable" conditions or burdens on Bronowicz that would be inconsistent with his claim that that the January 2011 judgment was imposed illegally.

Moreover, the purpose of the favorable termination rule is fully realized by this result because there is no risk that permitting Bronowicz's § 1983 claims to proceed would lead to "two conflicting resolutions arising from the same transaction." *Gilles*, 427 F.3d at 209 (citing *Heck*, 512 U.S. at 484). Upon the imposition of the judgment of sentence in January 2011, Bronowicz did exactly what *Heck* requires—he appealed to a competent state tribunal which declared that judgment invalid.[16]

---

imposed, and there was no probation order to continue at that time, as the January 2011 order assessed no further penalty at every count (excepting the sentence of incarceration that was vacated). Given the ambiguity in the record and our obligation to accept Bronowicz's factual allegations as true when reviewing an order granting a motion to dismiss, our analysis assumes that Bronowicz was completely released from custody on May 1, 2012.

[16] Thus, Bronowicz's § 1983 claims are not an attempt to end-run state review or federal habeas procedures. *See supra* n.13. In fact, there is no further action that Bronowicz could have taken to obtain a more express declaration that the judgment imposed was "illegal," as he could not have appealed to the Pennsylvania Supreme Court or filed a federal habeas petition once he had achieved the desired result— vacatur of the judgment of sentence. It would be a bizarre

Bronowicz's claims stemming from the January 2011 revocation proceedings and sentence do not constitute a collateral attack on his sentence because Bronowicz has already successfully challenged his sentence in state court. *See, e.g.*, *Powell*, 757 F.3d at 346 (§ 1983 claim for parole supervision beyond the maximum sentence was not a collateral attack against sentence and was not barred by *Heck* where sentence had already been invalidated by an appropriate state tribunal). Success on Bronowicz's § 1983 claims attacking the legality of the January 2011 proceedings would be fully consistent with the Superior Court's order. Thus, the Superior Court's order satisfies the favorable termination rule and fulfills its objectives.

We hold that Bronowicz's § 1983 claims arising from the January 2011 proceedings before the Court of Common Pleas are not barred by *Heck* because Bronowicz has demonstrated that the judgment imposed was invalidated on appeal. The District Court, however, properly dismissed Bronowicz's remaining § 1983 claims, which, if successful, would impugn the validity of the July 2005 and July 2008 revocation proceedings, as Bronowicz has not demonstrated that those proceedings were terminated in his favor.[17]

result indeed to bar Bronowicz's § 1983 claims—notwithstanding the fact that a competent tribunal vacated his sentence—because the Commonwealth happened to admit to all of his allegations, obviating the need for thorough analysis by the tribunal.

[17] The Superior Court order does not address the sentences imposed in July 2005 and July 2008. Bronowicz never appealed these sentences. Thus no court order

22

IV. Conclusion

For the foregoing reasons we will affirm in part and reverse in part the District Court's order dismissing the Complaint.[18]  We remand to the District Court for further proceedings consistent with this opinion.

invalidating them exists, as Bronowicz conceded at oral argument.

[18] We do not consider Appellees' alternative arguments for dismissal that were not passed on by the District Court.